Meredith Holley, OSB No. 125647
Meredith@ErisResolution.com
Law Office of Meredith Holley
207 E 5th Avenue, Suite 254
Eugene, OR 97401
Phone: (458) 221-2671
Fax: (833) 352-3615
        Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| DR. DELIA SHELTON,<br><br>        Plaintiff,<br><br><br>        vs.<br><br><br><br>OREGON STATE UNIVERSITY, an Oregon public university, and ROBYN TANGUAY, an individual,<br>        Defendants. | Case No.   6:21-cv-01283<br><br>COMPLAINT<br>(Wage Theft, Wage Discrimination, Race Discrimination, Civil Rights Violations)<br><br><br>Demand for Jury Trial |

**INTRODUCTION**

1.

From 1619 through at least the mid-1800s, it was the policy or law of the United States that Black employees receive $0.00 to every dollar a white employee received for similar work. In the 1880s, Black employees received approximately

COMPLAINT – Page 1

$0.34 to every dollar a white employee received.[1] In the late 1800s and early 1900s, after the United States federal government declared its intention to outlaw the practice of slavery, white people still devised ways to avoid paying Black people for their work. For example, the practice of tipping "was explicitly used to avoid paying black Americans for their labor[.]"[2] In 1967, Black women employees received approximately $0.43 for every dollar a white man received for work.[3] In 2019, in Oregon Black women received approximately $0.65 for every dollar white men received for work.[4]

2.

In 2018, Defendant OSU hired Dr. Delia Shelton as a post-doctoral fellow and the only Black employee in its Sinnhuber Aquatic Research Laboratory. At around that time, Black people on Defendant OSU's campus experienced a series of threats. A Black basketball player, for example, reported that Defendant OSU's basketball ticketholders screamed racial slurs at her. A white terrorist who worked as a teaching fellow for Defendant OSU lectured to a class that only white men should be allowed university education and damaged the cars of people supporting Black students, marking them with racial slurs. Upon information and belief, Defendant OSU did not discipline anyone for these incidents.

---

[1] Kenneth Ng and Nancy Virts, *The Black-White Income Gap in 1880,* AGRICULTURAL HISTORY, Vol. 67, No. 1 (Winter, 1993), p. 2 (last accessed August 19, 2021), http://www.csun.edu/~hfeco002/black%20white%20income%20gap.pdf.

[2] Rakeen Mabud, *The Racist Roots Of Tipping Reemerge In The Gig Economy*, FORBES (February 12, 2019), https://www.forbes.com/sites/rakeenmabud/2019/02/12/the-racist-roots-of-tipping-reappearing-in-the-gig-economy/?sh=736f1d236a66; Andrea Flynn, *It Takes Black Women in the U.S. 20 Months to Earn What White Men Make in a Year. Here is the History Behind That Wage Gap*, TIME (August 22, 2019), https://time.com/5655678/black-womens-equal-pay-day-history/.

[3] Abby Lane and Katherine Gallagher Robbins, *The Wage Gap Over Time*, NATIONAL WOMEN'S LAW CENTER (May 3, 2012), https://nwlc.org/blog/wage-gap-over-time/.

[4] *Wage Gap for Black Women State Rankings: 2019*, NATIONAL WOMEN'S LAW CENTER (last accessed August 19, 2021), https://nwlc.org/wp-content/uploads/2018/12/Black-Women-Wage-Gap-State-By-State-2020.pdf.

COMPLAINT – Page 2

3.

From September 1, 2019, through February 2020, Defendant OSU paid its non-Black workers, but expected Dr. Shelton to work without pay. Like so many people before her, Dr. Shelton received $0.00 to every dollar a Defendant OSU paid to its non-Black employees. When Dr. Shelton asked to be paid for her work, Defendant Robyn Tanguay, Dr. Shelton's non-Black supervisor, threatened Dr. Shelton that her career could be in jeopardy if she continued to ask to be paid for her work.

4.

When a $1 million federal grant that Dr. Shelton acquired on behalf of Defendant OSU was funded, instead of paying Dr. Shelton the back wages it owed, Defendant OSU suddenly demanded Dr. Shelton *pay it* back wages. Defendant Tanguay threatened Dr. Shelton that Dr. Shelton would be pursued by the IRS if she did not pay Defendant OSU. Defendant Tanguay said it was "unfortunate" that OSU had stolen her work, but that if Dr. Shelton did not pay Defendant OSU, it would be Dr. Shelton's fault if she was not able to access her full grant funding.

5.

When Dr. Shelton did not pay, Defendant OSU restricted her to what it called the "dirty" section of its Aquatic Lab. Defendant restricted Dr. Shelton's credentials when she asked for fair work, and throughout her work, when it did pay her, Defendant OSU paid Dr. Shelton significantly less than non-Black coworkers performing similar work.

COMPLAINT – Page 3

## JURISDICTION AND VENUE

6.

This matter arises under federal law, 42 U.S.C. 2000e *et seq*. and 29 U.S.C. § 206. Supplemental jurisdiction over related state law claims is proper under 28 U.S.C. § 1367.

7.

The events underlying Plaintiff's claims took place in Benton County, Oregon, making venue proper in the District of Oregon, Eugene Division.

## PARTIES

8.

At all times relevant to this complaint, the plaintiff, Dr. Delia Shelton, was a resident of Benton County, Oregon. At all times relevant to this complaint, Dr. Shelton was a post-doctoral fellow, working in the Environmental and Molecular Toxicology Department, Sinnhuber Aquatic Research Laboratory, at Defendant Oregon State University. At all times relevant to this complaint, Dr. Shelton was the only Black employee in the Sinnhuber Aquatic Research Laboratory.

9.

Defendant Oregon State University (OSU) is a public research university with its principal campus in Benton County, Oregon. Defendant OSU receives federal funding for research. At all times relevant to this complaint, Defendant OSU was Dr. Shelton's employer.

10.

Upon information and belief, Defendant Robyn Tanguay is a resident of Benton County, Oregon. Defendant Tanguay is non-Black. At all times relevant to this

COMPLAINT – Page 4

Complaint, Defendant Tanguay was the Laboratory Director for the Sinnhuber Aquatic Research Laboratory and Dr. Shelton's direct supervisor.

## FACTUAL ALLEGATIONS

11.

In 2018, Defendant OSU hired Dr. Shelton as a post-doctoral fellow in its the Sinnhuber Aquatic Research Laboratory. Dr. Shelton did not take classes and worked full-time in the Sinnhuber Lab.

12.

In July 2019, Dr. Shelton learned that the National Institutes of Health (NIH) would be awarding her a prestigious $1 million grant, a grant awarded to very few scientists. Defendant Tanguay was the faculty supervisor named in that grant. In total, Dr. Shelton acquired approximately $1,048,973 in grant funding for Defendant OSU.

13.

On September 1, 2019, Defendant OSU stopped paying Dr. Shelton for her work or providing her health insurance benefits. Defendant OSU continued to require Dr. Shelton to work full-time in its Sinnhuber Lab. From September 1, 2019, through early February 2020, Dr. Shelton, like so many Black women before her, received $0.00 for every dollar a white man was paid for similar work.

14.

Alarmed, Dr. Shelton repeatedly asked Defendant Tanguay about her pay in late 2019 and early 2020. Dr. Shelton suggested that if funding were an issue, she could apply for diversity fellowships or other gap funding. Defendant Tanguay discouraged and even threatened Dr. Shelton about her requests to be paid for her

COMPLAINT – Page 5

work. Defendant Tanguay told Dr. Shelton that Dr. Shelton's NIH grant would be funded soon, but in the meantime, Dr. Shelton would not be paid.

15.

On December 2, 2019, Defendant Tanguay emailed Dr. Shelton, saying, "It is really not a good idea to ask for gap funding before your grant is awarded. It takes time, and they cannot be rushed. Pointing out that you are gapped puts OSU and me in an awkward position." To Dr. Shelton's knowledge, Defendant Tanguay did not withhold pay from her non-Black coworkers.

16.

On January 2, 2020, Dr. Shelton met with Defendant Tanguay. Dr. Shelton told Defendant Tanguay that she had been working for four months with no pay. Defendant Tanguay became hostile and said, "I can't keep track of everyone's situation!" Defendant Tanguay referred to the previous recipient of the same NIH grant that Dr. Shelton received, saying, "I don't know why Sean didn't want to work in the lab for free to advance his career." The person Defendant Tanguay referred to had lost his grant and was out of academia. Dr. Shelton was afraid that Defendant Tanguay was threatening the same would happen to her if she did not work for free.

17.

On January 9, 2020, Defendant Tanguay pressured Dr. Shelton to continue to work without pay, emailing, "The work you are doing is critical for you to have a chance to pull off your proposed research which you are obligated when you get funded." Also in January 2020, Defendant Tanguay told Dr. Shelton that she would likely not receive a diversity fellowship, even if she did apply.

COMPLAINT – Page 6

18.

In January 2020, Dr. Shelton told Defendant Tanguay that she could not keep feeding her colleagues' fish and supporting their work, when they were prohibited from feeding her fish and supporting her. Since approximately 2018, Defendant OSU had required Dr. Shelton to feed her non-Black colleague's fish and prohibited them from feeding Dr. Shelton's fish. Dr. Shelton did not see her non-Black colleagues required to feed other colleague's fish without reciprocation.

19.

In January 2020, after Dr. Shelton complained about the discriminatory work assignment, Defendant Tanguay immediately removed Dr. Shelton's access code to the main lab, even though her work bench was still in there. Dr. Shelton did not regain access to the main lab until May 2020. Dr. Shelton has not seen any of her non-Black colleagues locked out of the main lab.

20.

Also around January 2020, Defendant Tanguay told Dr. Shelton that she was required to buy all the surgical instruments her grant needed for dissecting fish and that she would not be allowed to use the instruments in the lab. Dr. Shelton's non-Black colleagues were allowed to use instruments in the lab.

21.

In mid-January 2020, Defendant Tanguay offered to Dr. Shelton that she may be able to start getting paid again for her work through pre-award spending on the NIH grant. When Dr. Shelton reviewed the contract, the salary offered was $60,000, which was $20,000 less than Defendant Tanguay had previously offered Dr. Shelton. The contract put Dr. Shelton in the lowest benefit class, which was also not consistent with the previous agreement. Dr. Shelton felt she had no

choice but to sign the contract because she had not received pay in almost five months. Still, Dr. Shelton received no pay.

22.

Around January 23, 2020, Defendants told Dr. Shelton to sign up with a third-party payment agency, Blue Sun, Inc., to receive her pay. On or about February 7, 2020, Dr. Shelton received her first paycheck since Defendant OSU stopped paying her on September 1, 2019. The paycheck did not include the back pay Dr. Shelton was owed.

23.

In early March 2020, the COVID-19 pandemic began. Dr. Shelton continued to have no health insurance and was very fearful about what could happen if she contracted the deadly and contagious virus. She was forced to avoid seeking medical care because of the wages and insurance Defendant OSU withheld.

24.

At the beginning of March 2020, Dr. Shelton's grant was fully funded. Defendant OSU paid Dr. Shelton retroactively to January 2020, but continued to withhold pay to Dr. Shelton for the months of September through December 2019.

25.

In early April 2020, Dr. Shelton discovered that Defendant OSU withdrew money from her paychecks for health insurance that it did not provide for her from January through March 2020, months in which she had avoided receiving medical care because she had no pay and no benefits.

26.

Suddenly, at the end of April 2020, Defendant OSU claimed Dr. Shelton would need to repay the University for the amounts that had been paid through Blue Sun,

COMPLAINT – Page 8

Inc., claiming Dr. Shelton had been double paid. When Dr. Shelton questioned this because of the months of work for which Defendant OSU never paid her, Defendant OSU insisted Dr. Shelton needed to repay the University.

27.

At the end of June 2020, Defendant OSU sent Dr. Shelton a notice that she would be sent to collections if she did not repay the amounts paid by Blue Sun, Inc.

28.

In July 2020, Dr. Shelton reported to the Associate of Dean Postdoctoral Programs and Associate Vice President for Research Administration and Development by email that she worked for months without pay and there was still backpay owed to her. Dr. Shelton also reported that she had discovered she was still being paid $15,000 less per year than the previous recipient of the same NIH grant. The previous recipient was a white man and was paid $75,000 for the same work Dr. Shelton had been doing. Still, Defendant OSU took no action to correct the wage problem or the discriminatory pay.

29.

In July 2020, Dr. Shelton's fish were injured in the main lab. Dr. Shelton reported the condition to facilities manager for Defendant OSU's Sinnhuber Lab. The facilities manager blamed Dr. Shelton for the condition and required her to demonstrate basic lab netting practices and discuss the state of her fish in front of a lab meeting, which was humiliating and degrading. Around the beginning of July, a non-Black coworker told Dr. Shelton that the coworker's own fish had died in the assay process. The non-Black coworker had not been not required to demonstrate basic netting practices, nor was the condition of her fish discussed in front of the lab meeting.

COMPLAINT – Page 9

30.

On July 23, 2020, the facilities manager for Defendant OSU's Sinnhuber Lab called Dr. Shelton and accused her of "contaminating" a lab area to which Dr. Shelton did not even have access. This seemed consistent with an assumption from Defendant OSU's Sinnhuber Lab management's that Dr. Shelton was "dirty" a historically common stereotype of Black workers. For example, in the late 1800s, Black Americans began to attempt to gain financial independence by agricultural endeavors, including growing watermelons.[5] Many white people reacted to this financial freedom by characterizing watermelons as a symbol of poverty, associated with Black people being "unclean, lazy and child-like."[6] Characterizing Black employees as unclean and childlike, particularly when those employees have gained financial freedom or accomplishment like Dr. Shelton did through the funding of her grant, has continued as a stereotype to oppress Black employees through the date of this Complaint.

31.

In August and September 2020, Dr. Shelton met with Defendant Tanguay again multiple times regarding Defendant OSU's theft of her wages. Defendant Tanguay refused to pay Dr. Shelton back wages and continued to pressure her to personally repay the amounts paid by Blue Sun, Inc.

32.

On October 1, 2020, Defendant Tanguay responded to Dr. Shelton's request for payment of the wages Defendant OSU had stolen, saying, "You don't want to be a problem child for your granting agency." Referring to Dr. Shelton as a child

---

[5] *Popular and Pervasive Stereotypes of African Americans*, SMITHSONIAN NATIONAL MUSEUM OF AFRICAN AMERICAN HISTORY & CULTURE (last accessed August 19, 2021), https://nmaahc.si.edu/blog-post/popular-and-pervasive-stereotypes-african-americans.
[6] *Id.*

COMPLAINT – Page 10

appeared to be based in stereotypes that Black people are "unclean, lazy and childlike."[7]

33.

On October 2, 2020, Defendant OSU mailed Dr. Shelton another threat that it would send her to collections if she did not repay the wages paid to her through Blue Sun, Inc.

34.

On October 20, 2020, Defendant OSU's Sinnhuber Lab Facilities Manager forced Dr. Shelton to move her experiments to the back of the lab, which the Sinnhuber Lab management called the "dirty" area. The Facilities Manager told Dr. Shelton that she was restricted because Dr. Shelton had not worn booties in the lab at one point. It was common for Dr. Shelton's non-Black colleagues to fail to wear booties, but they were not restricted to the "dirty" area. Instead, Defendant OSU's Facility Manager appeared to be assuming Dr. Shelton was "dirty" because she is Black.

35.

On October 22, 2020, Dr. Shelton met with Defendant Tanguay over Zoom. Defendant Tanguay threatened Dr. Shelton that she needed to give Defendant OSU more money than it had already stolen from her saying, "If you don't comply, you'll lose the K99," referring to the first step in the NIH grant. Dr. Shelton made it clear she was being impacted differently as the only Black scientist in the department, saying, "I'll be like the 40% of African American or Black scientists that didn't activate the R00," referring to the second step in the NIH grant. Defendant Tanguay blamed this on Dr. Shelton's unwillingness to

_____

[7] *Id.*

COMPLAINT – Page 11

give Defendant OSU more money than it had already stolen from her, saying, "Yes, and it will be all your fault. … There was a gap period of time that you weren't compensated. That's unfortunate." Defendant Tanguay threatened that Dr. Shelton would be pursued by the IRS for years if she did not pay Defendant OSU additional money on top of what it had already stolen and that her contract would not be renewed after it ended on December 31, 2020, if she did not pay Defendant OSU.

36.

On December 12, 2020, Dr. Shelton provided valid Tort Claims Notice to Defendant OSU under ORS 30.275.

37.

On February 5, 2021, Dr. Shelton filed a complaint with the Oregon Bureau of Labor and Industries.

38.

On August 24, 2021, the Oregon Bureau of Labor and Industries issued Dr. Shelton a 90-day right to sue letter.

39.

Defendants' actions and inactions have caused Plaintiff wage loss and severe emotional distress, including humiliation, pain, sleeplessness, degradation, and fear for her career, health, and livelihood. Dr. Shelton experienced the humiliation of acquiring a prestigious grant on behalf of an institution she hoped would support her, and then having that institution betray her and steal her work instead. Dr. Shelton's hair began falling out and she gained weight. She learned that her blood pressure elevated to stage 1 hypertension. Dr. Shelton began having

COMPLAINT – Page 12

suicidal thoughts as a result of Defendants' actions. Compensation for Dr.

Shelton's harms should be determined by a jury at trial.

## FIRST CLAIM FOR RELIEF
## WAGE THEFT - 29 U.S.C. § 206
## (AGAINST DEFENDANT OSU)

40.

Plaintiff repeats and realleges paragraphs 1–39 as though fully set forth.

41.

Defendant OSU violated 29 U.S.C. § 206 by engaging in commerce and receiving

federal funding while stealing wages from Plaintiff between dates to be

determined more specifically through discovery that are upon information and

belief September 1, 2019, through approximately February 7, 2020, during which

time Defendant OSU paid Plaintiff no wages.

42.

Defendant OSU's actions in stealing Plaintiff's wages were willful.

43.

Under 29 U.S.C. § 216, Plaintiff is entitled to unpaid wages, penalties, liquidated

damages, reasonable attorney fees, and costs of the action.

## SECOND CLAIM FOR RELIEF
## WAGE THEFT - ORS 653.025
## (AGAINST DEFENDANT OSU)

44.

Plaintiff repeats and realleges paragraphs 1–43 as though fully set forth.

45.

Defendant OSU violated ORS 653.025 by employing Plaintiff, in that it suffered

or permitted Plaintiff to perform work that was not voluntary and was performed

COMPLAINT – Page 13

with expectation of compensation, but withheld and stole pay from Plaintiff during a time frame that will be more fully determined through discovery but upon information and belief is between September 1, 2019, through February 7, 2020.

46.

Plaintiff is entitled to civil penalties and costs under ORS 653.256 and ORS 652.150.

47.

Plaintiff is entitled to reasonable attorney fees under ORS 653.055 and ORS 20.107.

### THIRD CLAIM FOR RELIEF
### WAGE DISCRIMINATION - ORS 652.220
### (AGAINST DEFENDANT OSU)

48.

Plaintiff repeats and realleges paragraphs 1–47 as though fully set forth.

49.

Defendant OSU violated ORS 652.220 by discriminating against Plaintiff in her compensation compared to her non-Black and/or male peers because of her race and/or sex as described above and incorporated herein. Specifically, Defendant OSU paid Plaintiff no money when it paid her non-Black and/or male colleagues, and then paid Plaintiff significantly less than her non-Black and/or male colleagues when it finally offered her pay.

50.

Plaintiff is entitled to back pay, liquidated damages, and reasonable attorney fees under ORS 652.230 and attorney fees under ORS 20.107.

COMPLAINT – Page 14

51.

Plaintiff is entitled to punitive damages under ORS 659A.885 in that Defendant OSU engaged in fraud and/or acted wantonly by acting with reckless indifference to Plaintiff's right to be paid for her work. The amount of punitive damages should be determined by a jury at trial and should be sufficient to deter future similar conduct.

## FOURTH CLAIM FOR RELIEF
### WAGE DISCRIMINATION - 29 U.S.C. § 206
### (AGAINST DEFENDANT OSU)

52.

Plaintiff repeats and realleges paragraphs 1–51 as though fully set forth.

53.

Defendant OSU violated 29 U.S.C. § 206 as described above by discriminating against Plaintiff, as a woman, on the basis of sex by paying her wages at a rate less than the rate paid to men for equal work requiring equal skill, effort, and responsibility, under similar working conditions.

54.

Defendant OSU's actions in paying Plaintiff less than her male comparators were willful.

55.

Under 29 U.S.C. § 216, Plaintiff is entitled to unpaid wages, liquidated damages, penalties, reasonable attorney fees, and costs of the action.

**FIFTH CLAIM FOR RELIEF**
**RACE DISCRIMINATION – TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(AGAINST DEFENDANT OSU)**

56.

Plaintiff repeats and realleges paragraphs 1–55 as though fully set forth.

57.

Defendant OSU violated Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et seq.,* by treating Plaintiff differently in the terms and conditions of her employment than her non-Black coworkers in one or more of the following:

a) In stealing Dr. Shelton's wages between approximately September 1, 2019, through February 7, 2020;

b) In paying Dr. Shelton less than her non-Black and/or male coworkers because of her race and/or sex;

c) In requiring, Dr. Shelton to feed other employees' fish, but not requiring other employees to feed Dr. Shelton's fish;

d) In instructing other employees not to feed Dr. Shelton's fish while requiring her to feed other employees' fish;

e) In restricting Dr. Shelton's access to the lab after she complained about the different terms and conditions of employment applied to her than to her non-Black coworkers;

f) In restricting Dr. Shelton to the "dirty" area of the lab;

g) In accusing Dr. Shelton of contaminating a part of the lab that she was restricted from;

h) In requiring Dr. Shelton to purchase her own instruments for lab experiments, but providing instruments to her non-Black coworkers;

i) In requiring Dr. Shelton to demonstrate netting techniques it did not require her non-Black coworkers to demonstrate; and/or

COMPLAINT – Page 16

j)  In telling Dr. Shelton that she would need to "work for free" in order to advance her career and that if she did not pay Defendant OSU, it would be Dr. Shelton's own fault if, like 40% of African American grantees, she did not advance to the second part of her grant.

58.

Defendants' actions and inactions have caused Plaintiff wage loss and severe emotional distress, including humiliation, pain, sleeplessness, degradation, and fear for her career, health, and livelihood. Dr. Shelton experienced the humiliation of acquiring a prestigious grant on behalf of an institution she hoped would support her, and then having that institution betray her and steal her work instead. Dr. Shelton's hair began falling out and she gained weight. She learned that her blood pressure elevated to stage 1 hypertension. Dr. Shelton began having suicidal thoughts as a result of Defendants' actions. Compensation for Dr. Shelton's harms should be determined by a jury at trial.

59.

Defendant OSU acted with malicious or reckless indifference to Plaintiff's federally protected rights to a safe work environment free from race-based discrimination, and Plaintiff is entitled to punitive damages under 42 U.S.C. § 1981 in an amount to be determined by a jury that would deter future similar conduct.

60.

Plaintiff is entitled to reasonable attorney fees and costs to be determined by the court under 42 U.S.C. § 2000e-5.

**SIXTH CLAIM FOR RELIEF**
**RACE DISCRIMINATION - ORS 659A.030**
**(AGAINST DEFENDANT OSU)**

61.

Plaintiff repeats and realleges paragraphs 1–60 as though fully set forth.

62.

Defendant violated ORS 659A.030 by treating Plaintiff differently in the terms and conditions of her employment than her non-Black coworkers in one or more of the following:

a) In stealing Dr. Shelton's wages between approximately September 1, 2019, through February 7, 2020;

b) In paying Dr. Shelton less than her non-Black and/or male coworkers because of her race and/or sex;

c) In requiring, Dr. Shelton to feed other employees' fish, but not requiring other employees to feed Dr. Shelton's fish;

d) In instructing other employees not to feed Dr. Shelton's fish while requiring her to feed other employees' fish;

e) In restricting Dr. Shelton's access to the lab after she complained about the different terms and conditions of employment applied to her than to her non-Black coworkers;

f) In restricting Dr. Shelton to the "dirty" area of the lab;

g) In accusing Dr. Shelton of contaminating a part of the lab that she was restricted from;

h) In requiring Dr. Shelton to purchase her own instruments for lab experiments, but providing instruments to her non-Black coworkers;

i) In requiring Dr. Shelton to demonstrate netting techniques it did not require her non-Black coworkers to demonstrate; and/or

COMPLAINT – Page 18

j) In telling Dr. Shelton that she would need to "work for free" in order to advance her career and that if she did not pay Defendant OSU, it would be Dr. Shelton's own fault if, like 40% of African American grantees, she did not advance to the second part of her grant.

63.

Defendants' actions and inactions have caused Plaintiff wage loss and severe emotional distress, including humiliation, pain, sleeplessness, degradation, and fear for her career, health, and livelihood. Dr. Shelton experienced the humiliation of acquiring a prestigious grant on behalf of an institution she hoped would support her, and then having that institution betray her and steal her work instead. Dr. Shelton's hair began falling out and she gained weight. She learned that her blood pressure elevated to stage 1 hypertension. Dr. Shelton began having suicidal thoughts as a result of Defendants' actions. Compensation for Dr. Shelton's harms should be determined by a jury at trial.

64.

Plaintiff is entitled to punitive damages under ORS 659A.885 in that Defendant OSU engaged in fraud and/or acted wantonly by acting with reckless indifference to Plaintiff's right to a safe work environment free from race-based discrimination. The amount of punitive damages should be determined by a jury at trial and should be sufficient to deter future similar conduct.

65.

Plaintiff is entitled to reasonable attorney fees and costs under ORS 659A.885 and ORS 20.107.

COMPLAINT – Page 19

## SEVENTH CLAIM FOR RELIEF
## FOURTEENTH AMENDMENT VIOLATION – 42 U.S.C. § 1983
### (AGAINST DEFENDANT TANGUAY)

66.

Plaintiff repeats and realleges paragraphs 1–65 as though fully set forth.

67.

At all times relevant to this complaint, Defendant Tanguay was acting individually under color of state law and within the scope of her employment with Defendant OSU.

68.

Defendant Tanguay violated 42 U.S.C. § 1983 by imposing different restrictions, benefits, pay, and practices on Plaintiff than on her non-Black coworkers in one or more of the following:

a) In stealing Dr. Shelton's wages between approximately September 1, 2019, through February 7, 2020;

b) In paying Dr. Shelton less than her non-Black and/or male coworkers because of her race and/or sex;

c) In requiring, Dr. Shelton to feed other employees' fish, but not requiring other employees to feed Dr. Shelton's fish;

d) In instructing other employees not to feed Dr. Shelton's fish while requiring her to feed other employees' fish;

e) In restricting Dr. Shelton's access to the lab after she complained about the different terms and conditions of employment applied to her than to her non-Black coworkers;

f) In restricting Dr. Shelton to the "dirty" area of the lab;

g) In accusing Dr. Shelton of contaminating a part of the lab that she was restricted from;

COMPLAINT – Page 20

h) In requiring Dr. Shelton to purchase her own instruments for lab experiments, but providing instruments to her non-Black coworkers;

i) In requiring Dr. Shelton to demonstrate netting techniques it did not require her non-Black coworkers to demonstrate; and/or

j) In telling Dr. Shelton that she would need to "work for free" in order to advance her career and that if she did not pay Defendant OSU, it would be Dr. Shelton's own fault if, like 40% of African American grantees, she did not advance to the second part of her grant.

Each of these actions individually and/or collectively violated Plaintiff's right to equal protection under the law guaranteed by the Fourteenth Amendment to the United States Constitution.

69.

Defendants' actions and inactions have caused Plaintiff wage loss and severe emotional distress, including humiliation, pain, sleeplessness, degradation, and fear for her career, health, and livelihood. Dr. Shelton experienced the humiliation of acquiring a prestigious grant on behalf of an institution she hoped would support her, and then having that institution betray her and steal her work instead. Dr. Shelton's hair began falling out and she gained weight. She learned that her blood pressure elevated to stage 1 hypertension. Dr. Shelton began having suicidal thoughts as a result of Defendants' actions. Compensation for Dr. Shelton's harms should be determined by a jury at trial.

70.

Defendant acted with reckless or callous indifference to Plaintiff's right to equal protection under the law, and Plaintiff is entitled to punitive damages in an

amount to be determined by a jury that would deter similar conduct to that of Defendant Tanguay.

71.

Plaintiff is entitled to reasonable attorney fees and costs to be determined by the court under 42 U.S.C. § 1988.

**SEVENTH CLAIM FOR RELIEF**
**AIDER AND ABETTOR - ORS 659A.030**
**(AGAINST DEFENDANT TANGUAY)**

72.

Plaintiff repeats and realleges paragraphs 1–71 as though fully set forth.

73.

Defendant Tanguay violated ORS 659A.030 by aiding, abetting, inciting, compelling, or coercing Defendant OSU into treating Plaintiff differently in the terms and conditions of her employment than her non-Black coworkers in one or more of the following actions:

a) In stealing Dr. Shelton's wages between approximately September 1, 2019, through February 7, 2020;

b) In paying Dr. Shelton less than her non-Black and/or male coworkers because of her race and/or sex;

c) In requiring, Dr. Shelton to feed other employees' fish, but not requiring other employees to feed Dr. Shelton's fish;

d) In instructing other employees not to feed Dr. Shelton's fish while requiring her to feed other employees' fish;

e) In restricting Dr. Shelton's access to the lab after she complained about the different terms and conditions of employment applied to her than to her non-Black coworkers;

COMPLAINT – Page 22

f)  In restricting Dr. Shelton to the "dirty" area of the lab;

g)  In accusing Dr. Shelton of contaminating a part of the lab that she was
    restricted from;

h)  In requiring Dr. Shelton to purchase her own instruments for lab
    experiments, but providing instruments to her non-Black coworkers;

i)  In requiring Dr. Shelton to demonstrate netting techniques it did not
    require her non-Black coworkers to demonstrate; and/or

j)  In telling Dr. Shelton that she would need to "work for free" in order to
    advance her career and that if she did not pay Defendant OSU, it would be
    Dr. Shelton's own fault if, like 40% of African American grantees, she did
    not advance to the second part of her grant.

74.

Defendants' actions and inactions have caused Plaintiff wage loss and severe
emotional distress, including humiliation, pain, sleeplessness, degradation, and
fear for her career, health, and livelihood. Dr. Shelton experienced the humiliation
of acquiring a prestigious grant on behalf of an institution she hoped would
support her, and then having that institution betray her and steal her work instead.
Dr. Shelton's hair began falling out and she gained weight. She learned that her
blood pressure elevated to stage 1 hypertension. Dr. Shelton began having
suicidal thoughts as a result of Defendants' actions. Compensation for Dr.
Shelton's harms should be determined by a jury at trial.

75.

Plaintiff is entitled to reasonable attorney fees and costs under ORS 659A.885 and
ORS 20.107.

COMPLAINT – Page 23

WHEREFORE, Plaintiff Delia Shelton prays for judgment against Defendants as follows:

a. Economic damages in the form of wage loss in an amount to be determined at trial, and prejudgment interest thereon;

b. Fair and reasonable compensatory damages to be determined at the time of trial;

c. Liquidated damages under 29 U.S.C. § 216 and ORS 652.230;

d. Penalties under 29 U.S.C. § 216, ORS 653.256, and ORS 652.150

e. Punitive damages; and

f. Reasonable attorney fees and costs incurred herein under 29 U.S.C. § 216, 42 U.S.C. 1988, 42 U.S.C. 2000e-5, ORS 659A.885, and ORS 20.107.

DATED this 30th day of August, 2021.

Meredith Holley, OSB #125647
Meredith@ErisResolution.com
LAW OFFICE OF MEREDITH HOLLEY
207 E 5th Avenue, Suite 254
Eugene, OR 97401
Telephone: (458) 221-2671
Fax: (833) 352-3615
        Attorney for Plaintiff

COMPLAINT – Page 24